# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAUL MORRISON,

    *Plaintiff,*

vs.

GEICO GENERAL INSURANCE COMPANY,

    *Defendant.*

Case No. 17-CV-1272-EFM

## MEMORANDUM AND ORDER

In June 2016, Plaintiff Paul Morrison sustained injuries after his vehicle allegedly hit a tire or tire tread, lost control, and flipped. He provided his auto insurer, Defendant GEICO General Insurance Company, with a settlement demand and Defendant denied coverage under the applicable insurance policy. This suit followed. Plaintiff seeks damages allegedly available pursuant to his uninsured motorist coverage. The matter is currently before the Court on Defendant's Motion for Summary Judgment (Doc. 21). For the reasons stated below, the Court denies Defendant's Motion.

# I. Factual and Procedural Background[1]

At approximately 10:35 p.m. on June 5, 2016, while traveling alone in Illinois, Plaintiff was injured in a one-vehicle accident. Plaintiff's Complaint alleges that he struck a large tire that fell off an unidentified vehicle or its load. Plaintiff testified that he only saw the alleged object for a split second, and that he was not sure what he had hit, but that he believed he had hit a tire tread. Plaintiff does not know where the alleged tire tread came from, how it got in the road, or how long it had been in the road.

Plaintiff informed the investigating police officer, Officer Korando, that he struck "something in the roadway" which caused his vehicle to leave the roadway, strike a ditch, and roll onto its roof. Officer Korando testified that he would have specifically stated in his report what kind of object Plaintiff struck if he had been provided that information. While at the scene of the accident, Officer Korando did not see any tire, tire tread, or debris in the roadway or along the side of the road. During accident investigations, Officer Korando routinely inquires into the existence of any witnesses and lists witnesses, if any, in his report. Officer Korando's report listed no witnesses to Plaintiff's accident.

According to Plaintiff, a couple—the Woolfords—traveling in the same direction as Plaintiff saw the accident and stopped to assist. While at the scene of the accident, Mr. Woolford allegedly searched the immediate area, but found no tire, tire parts, or debris of any kind.

---

[1] The facts in this section, unless otherwise noted, are uncontroverted for purposes of summary judgment.

Plaintiff's attempts to contact the Woolfords have been unsuccessful, and no testimony or admissible statements have been procured from the Woolfords.

Plaintiff has not identified evidence that the alleged tire tread fell from a vehicle transporting an unsecured load of debris, or that if it had, the owner or operator of such vehicle was aware of the loss. Nor has Plaintiff identified any evidence that the driver of the vehicle that lost the tire tread would have known that it had been lost. Plaintiff's expert on this issue agrees that when a semi-trailer, or similar trailer, loses a tread on a double set of wheels, the driver may not be aware that the tread had been lost.

At the time of Plaintiff's accident, Plaintiff possessed a GEICO automobile liability policy ("Policy"). Section IV of the Policy provides uninsured motorist coverage and states that "we will pay damages for ***bodily injury*** caused by accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***uninsured motor vehicle*** or ***hit-and-run motor vehicle*** arising out of the ownership, maintenance or ***use*** of that auto."[2] Section IV defines a hit-and-run motor vehicle and an uninsured motor vehicle as follows:

> **1.** ***"Hit-and-run motor vehicle"*** is a motor vehicle whose operator or owner cannot be identified and which causes an accident resulting in ***bodily injury*** without hitting
>
>     (a) ***you*** or any ***relative***;
>
>     (b) a vehicle which ***you*** or any ***relative*** are ***occupying***; or
>
>     (c) ***your insured auto***,

---

[2] The Policy indicates which terms are defined in the Policy by bolding and italicizing those terms or phrases. Thus, terms and phrases not bolded and italicized are not given definitions in the Policy. Unless otherwise noted, all quotes to the Policy include the original typographical emphases.

Provided the *insured* or someone on his behalf:

- (a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

- (b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

- (c) makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

In an accident involving a **hit-and-run motor vehicle** where there has not been any physical contact with the **hit-and-run motor vehicle**, the facts of the accident must be proven by reliable evidence from disinterested witnesses who are not making claim under this or similar coverage.

. . . .

**7.** *"Uninsured motor vehicle"* is a motor vehicle which had no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the *state* in which the *insured auto* is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage and **an underinsured motor vehicle** as defined.

The term *"uninsured motor vehicle"* does not include:

- (a) an *insured auto*;

- (b) an auto owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

- (c) an auto owned by the United States of America, any other national government, a *state*, or a political sub-division of any such government or its agencies;

- (d) a land motor vehicle or *trailer* operated on rails or crawler-treads or located [illegible] or premises; or

- (e) a farm-type tractor or equipment designed for *use* principally off public roads except while used on public roads.

Plaintiff filed this lawsuit alleging that his injuries resulted from the negligence of an uninsured motorist, that he is entitled to uninsured motorist coverage under his Policy with Defendant, and that Defendant has refused to provide coverage. Neither parties' briefing of the Motion addressed the language of the Policy, and on October 9, 2018, the Court held a hearing to allow the parties an opportunity to address the language of the Policy.[3]

## II.  Legal Standard

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the movant carries his initial burden, the nonmoving party may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory

---

[3] Instead, the parties' briefs focused primarily on the requirements of K.S.A. § 40-284—the Kansas uninsured motorist statute.

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

allegations alone cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[9]

### III.     Analysis[10]

Defendant's brief alleges that the Policy "incorporated the language of K.S.A. 40-284(e)(3)"—the Kansas uninsured motorist statute—and argues that based on K.S.A. § 40-284(e)(3), the Policy does not provide coverage for Plaintiff's claim. At oral argument, Defendant also argued that the Policy language precludes coverage for Plaintiff's claim because the definition of a hit-and-run motor vehicle is "a motor vehicle which causes an accident" and here a tire—not a motor vehicle—caused the accident; thus, no coverage exists. Although the Policy at issue in this case does not incorporate the language of K.S.A. § 40-284, as alleged, the Court will first set forth the relevant law regarding K.S.A. § 40-284 because that statute delineates the minimum uninsured motorist coverage required under Kansas law.

**A.     The Kansas uninsured motorist statute**

In 1968, the Kansas legislature enacted K.S.A. § 40-284, the Kansas uninsured motorist statute, which made uninsured motorist coverage "mandatory" for automobile liability insurance policies issued in Kansas.[11] As described by the Kansas Supreme Court, "the uninsured motorist statute is remedial in nature and should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured, caused by an

---

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] Both parties' arguments assume that Kansas law applies to the interpretation of the Policy. Nothing before the Court indicates that another state's law would apply, and the Policy suggests that Kansas law governs its interpretation. Accordingly, the Court construes the Policy under Kansas law.

[11] *Cannon v. Farmers Ins. Co., Inc.*, 274 Kan. 166, 50 P.3d 48, 51 (2002).

automobile accident, and arising out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured motorist."[12] An insurance provision which denies protection otherwise required by the statute "is an attempt to limit or dilute the unqualified uninsured motorist coverage mandated by K.S.A. 40-284 and is therefore void and unenforceable."[13]

The Kansas legislature amended the uninsured motorist statute in 1981, "primarily in response to *Simpson*," in order "to *permit*, among other exclusions, . . . the phantom hit-and-run vehicle" limitation authorized in current subsection (e)(3).[14] In *Simpson*, the plaintiff was forced to drive her vehicle into a ditch in order to avoid colliding with another vehicle; the other vehicle fled from the scene of the accident and the owner of the fleeing vehicle was never identified.[15] The policy at issue "excluded coverage when there was no physical contact between the insured and the uninsured phantom vehicle," and the Kansas Supreme Court found "that the 'physical contact' requirement in the 'hit and run' provisions of the [policy] was in derogation of the uninsured motorist statute and was, therefore, void as against public policy."[16]

---

[12] *Simpson v. Farmers Ins. Co. Inc*., 225 Kan. 508, 592 P.2d 445, 448 (1979).

[13] *Id*. at 450 (holding " 'physical contact' requirement in the 'hit and run' provisions of the automobile liability policy . . . in derogation of the Kansas Uninsured Motorist Statute, and [] therefore, void as against public policy"). In *Simpson*, the policy in question denied "protection to an insured for damages and injuries caused by a 'hit and run' vehicle unless there [was] actual physical contact between the vehicles." *Id*. at 448-49. *See also Cannon*, 50 P.3d at 51 ("Any attempts not authorized by statute to condition, limit, or dilute the broad, unqualified mandated uninsured motorist coverage are void and unenforceable.").

[14] *Cannon*, 50 P.3d at 51 (emphasis added).

[15] *Simpson*, 592 P.2d at 446.

[16] *Cannon*, 50 P.3d at 51.

The statute now includes six subparts, (a)-(f).[17] Applicable here are subsections (a) and (e)—those addressing mandatory coverage and permissive limitations. These subsections provide:

> (a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization.
>
> . . . .
>
> (e) Any insurer may provide for the exclusion or limitation of coverage:
>
> > (1) When the insured is occupying or struck by an uninsured automobile or trailer owned or provided for the insured's regular use;
> >
> > (2) when the uninsured automobile is owned by a self-insurer or any governmental entity;
> >
> > (3) when there is no evidence of physical contact with the uninsured motor vehicle and when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making claim under the policy;
> >
> > (4) to the extent that workers' compensation benefits apply;
> >
> > (5) when suit is filed against the uninsured motorist without notice to the insurance carrier; and

---

[17] Subsection (a) sets forth the requirement that insurers provide uninsured motorist coverage. Subsection (b) clarifies that "[a]ny uninsured motorist coverage shall include an underinsured motorist provision," and includes requirements for such provisions. Subsection (c) provides the insured with "the right to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107," and provides additional detail relating to a rejection of coverage. Subsection (d) discusses coverage limits.[17] Subsection (e) permits insurers to "provide for the exclusion or limitation of coverage" in six specifically enumerated circumstances. And subsection (f) addresses subrogation rights and settlement.

(6) to the extent that personal injury protection benefits apply.

While subsection (a) *requires* insurers to provide uninsured motorist coverage unless waived in writing, subsection (e) merely *permits* insurers to limit such coverage under the circumstances identified therein.[18] In other words, even if the Kansas uninsured motorist statute allows coverage to be excluded, those limitations do not apply unless the terms of the Policy also clearly and unambiguously include the authorized limitations. Thus, the specific language utilized in the Policy must be analyzed.[19]

**B.     The Policy**

The Kansas Supreme Court has summarized Kansas law regarding the interpretation of an insurance Policy as follows:

> Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. In such case, there is no need for judicial interpretation or the application of rules of liberal construction. The court shall not make another contract for the parties and must enforce the contract as made.

---

[18] *See, e.g.*, *Cannon*, 50 P.3d at 51 (noting that the statute includes "*permissible* exclusions" to the "*mandatory* uninsured motorist coverage," and that the legislature "amended the law to permit, among other exclusions, the one we consider in this case regarding the phantom hit-and-run vehicle") (emphases added).

[19] Although the Court finds the Policy language dispositive for purposes of this motion, Defendant's arguments regarding other states' uninsured motorist statutes do not persuade the Court as to the meaning of Kansas' uninsured motorist statute. The three states cited by Defendant as allegedly having uninsured motorist statutes "virtually identical" to Kansas—Louisiana, South Carolina, and West Virginia—have adopted materially distinguishable statutory frameworks that render cases interpreting those states' laws of minimal guidance. While Defendant does not specifically identify the statutes it alleges mirror Kansas, a review of those states' codes reveals that, unlike Kansas, each state *mandates* a "physical contact" requirement in defining insureds' rights. *See* La. Stat. Ann. § 22:1295(d)(i); S.C. Code Ann. § 38-77-170 (formerly S.C. Code Ann. § 56-9-850 (1976), recodified to § 38-77-170 in 1987); W. Va. Code Ann. § 33-6-31(e)(3) (West). That these states' legislatures mandated a "physical contact" limitation suggests differing public policy value-judgments underlie these statutes. Indeed, when Kansas adopted the limitations found in subsection (e), other states had adopted statutes mandating a physical contact restriction, yet the Kansas legislature chose to make the restrictions permissive. *See*, *e.g.*, S.C. Code Ann. § 56-9-850 (1976).

However, where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.

Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.[20]

When analyzing insurance policies, "exceptions, limitations, and exclusions to insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms."[21] With regard to coverage provisions, the Kansas Supreme Court has favorably cited Appleman on Insurance for the proposition that "[m]ost American courts apply a rule of construction that coverage terms are construed broadly and exclusions and limitations of coverage are construed narrowly."[22] As the party seeking summary judgment on an insurance policy, Defendant "bears the burden to prove that a loss or claim is excluded under the policy."[23] Defendant cannot meet this burden.

---

[20] *Am. Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 179 P.3d 1104, 1109-10 (2008) (quotation marks and bracketed material omitted).

[21] *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 89 P.3d 573, 577 (2004) (quoting *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1220 (1998)).

[22] *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 200 P.3d 419, 426 (2009) (citing 2 Holmes' Appleman on Insurance, § 6.1, p. 173 (2d ed. 1996)); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 137 P.3d 486, 858 (2006) (same).

[23] *Miller*, 200 P.3d at 426.

Here, the Policy states that Defendant "will pay damages for ***bodily injury*** caused by accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***uninsured motor vehicle*** or ***hit-and-run motor vehicle*** arising out of the ownership, maintenance or ***use*** of that auto." Defendant's Policy-based arguments hinge entirely upon the meaning of a hit-and-run motor vehicle under the Policy.[24] The Policy's definition of a hit-and-run motor vehicle, however, contains unclear, doubtful, and ambiguous language. Indeed, the definition appears to elude logical construction without either ignoring certain language in the Policy or adding additional language to the Policy.[25] The Court may do neither.

The Policy defines a hit-and-run motor vehicle as one that causes an accident *without hitting* the insured, a vehicle the insured is occupying, or the insured's auto. Oddly, the Policy also requires evidence from disinterested witnesses in accidents involving hit-and-run motor vehicles "where there has not been any physical contact with the ***hit-and-run motor vehicle***." Viewing the hit-and-run provision in its entirety, as this Court must,[26] the Policy appears to contemplate situations where there is some kind of physical contact with the hit-and-run motor

---

[24] Plaintiff encourages the Court to find coverage proper because it is legally entitled to recover from the owner or operator of an "***uninsured motor vehicle***." Defendant suggests that an uninsured motor vehicle does not include unknown or phantom drivers, but the Policy does not dictate this result. Distinctions between uninsured motor vehicles and hit-and-run motor vehicles are Policy-created distinctions—the Kansas uninsured motorist statute does not distinguish between these types of uninsured motorists. Given the inherent ambiguity in the definition of a hit-and-run motor vehicle, and the fact that the definition of an uninsured motor vehicle does not exclude motor vehicles whose owner or operators are unknown—despite the fact that it specifically sets forth what an "uninsured motor vehicle" does not include—the Court concludes that Plaintiff's argument is reasonable.

[25] While Defendant did not admit that the Policy is illogical, it admitted during oral argument that the definition of a hit-and-run motor vehicle "is not as logical as it might be." The Court agrees with Plaintiff's description of the Policy language relating to a hit-and-run motor vehicle as "so convoluted that it's almost impossible to understand."

[26] *See Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 71 P.3d 1097, 1120 (2003) ("All pertinent provisions of an insurance policy must be considered together, rather than in isolation, and given effect.") (citation omitted).

vehicle, but no hitting. Defendant could not describe a situation where there would be "any physical contact with the ***hit-and-run motor vehicle***" without there also having been a "hitting." Rather, it suggests that physical contact and hitting are the same thing and argues that the definition of a hit-and-run motor vehicle includes, by inference, a motor vehicle that causes an accident by hitting the insured. This attempt to reconcile these provisions, however, directly conflicts with the definition provided by the Policy—that a hit-and-run motor vehicle is one that causes an accident without hitting the insured. The only logical interpretation of the Policy as written is that the phrase "any physical contact" encompasses more contact than when a motor vehicle hits the insured. The Policy does not define what constitutes "any physical contact," but it is reasonable to conclude that it includes physical contact such as alleged by Plaintiff.[27]

The Kansas uninsured motorist statute sets forth the minimum uninsured motorist coverage insurers must provide. Defendant has not argued that coverage would not be proper under K.S.A. § 40-284(a)—nor does it appear that argument would succeed. Rather, Defendant argues that the Policy language adopts the limitations permitted by Kansas law, including the limitation identified in § 40-284(e)(3). A review of the Policy, however, indicates that the limitations Defendant argues

---

[27] A subsequent provision of the Policy uses the phrase "direct physical contact," leading the Court to conclude that a reasonable interpretation of the term "any physical contact" may include both direct and indirect physical contact. Other Courts have concluded that physical contact with a motor vehicle need not be "direct" and have found that coverage may exist where a vehicle has struck an item in the roadway, even though no one witnessed the item detach or fall from another vehicle. *See, e.g.*, *Duffiney v. Home Owners Ins. Co.*, 2010 WL 3768119 (Mich. Ct. App. 2010) (reversing district court's grant of summary judgment to defendant where insured hit an industrial valve in the road). Thus, when construing the ambiguous Policy language in the light most favorable to Plaintiff, it is not unreasonable to conclude that the phrase "any physical contact" includes indirect physical contact with a motor vehicle, such as contact with a tire or tire tread left in the roadway, and that the Policy covers such indirect contact.

apply here are unclear, ambiguous, and do not put the insured on notice of what coverage otherwise required by Kansas law has been excluded by the terms of the Policy.[28]

Defendant, as the preparer of its contracts, has the duty to make the meaning of its policies clear, including any limitations or restrictions on coverage. Defendant has failed to make clear the meaning of a hit-and-run motor vehicle and it cannot deny coverage based on the illogical and convoluted definition contained in the Policy. The Policy can be reasonably construed to find coverage under the circumstances alleged in this case and Defendant has failed to meet its burden to prove that Plaintiff's claim is excluded under the terms of the Policy.

**C.  Causation**

Defendant also sets forth arguments regarding the requisite causal connection Plaintiff must satisfy to obtain coverage under the Policy. To the extent these arguments relate to the requirements to constitute a hit-and-run motor vehicle under the Policy, the Court has already concluded that the definition lacks the requisite clarity for Defendant to rely on it as a limitation or restriction on coverage.[29] To the extent Defendant asks this Court to determine that Plaintiff cannot satisfy its burden to show that it is legally entitled to recover from the owner or operator of an uninsured motor vehicle, the Court declines to do so. Typically, questions of causation involve

---

[28] It is unnecessary for the Court to analyze whether K.S.A. § 40-284(e)(3) authorizes Defendant to exclude coverage under the circumstances because Defendant's Policy fails to clearly and unambiguously adopt that limitation.

[29] Further, nothing in the Policy language requires the type of immediate causation advocated for by Defendant and the cases Defendant relies upon in support of its position are not persuasive as they involved different states' laws, different statutory frameworks, and different policy language.

questions of fact for the jury, and the undisputed facts do not present only one permissible inference such that this Court may enter summary judgment in Defendant's favor.[30]

## IV. Conclusion

The language Defendant argues precludes coverage under the Policy at issue here does not clearly and unambiguously preclude coverage, and genuine issues of material fact remain as to whether coverage is proper under the Policy. Accordingly, Defendant's Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 21) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 17th day of October, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[30] *See, e.g.*, *Hale v. Brown*, 287 Kan. 320, 197 P.3d 438, 441 (2008) (noting that "proximate cause is ordinarily a question of fact that is reserved for the trier of fact" and only becomes a question of law if "all the evidence on which a party relies is undisputed and susceptible of only one inference").